Slip Op. 10-113

UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____
LIZARRAGA CUSTOMS             :
BROKER,                       :
                              :
            Plaintiff,        :
                              : Before: Richard K. Eaton, Judge
                              :
       v.                     : Court No. 08-00400
                              :
BUREAU OF CUSTOMS AND BORDER  :
PROTECTION, U.S. DEPARTMENT OF:
HOMELAND SECURITY; and ROSA   :
HERNANDEZ, PORT DIRECTOR,     :
OTAY MESA, CALIFORNIA,        :
                              :
            Defendants.       :
_____:
```

OPINION AND ORDER

[Directing entry of defendant's confession of judgment.]

Dated: October 4, 2010

*Sandler, Travis & Rosenberg, P.A.* (*Arthur K. Purcell* and *Kenneth N. Wolf*), for plaintiff.

*Tony West*, Assistant Attorney General; *Barbara S. Williams*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Justin R. Miller*), for defendants.

Eaton, Judge:  This matter is before the court for consideration of defendants' confession of judgment in plaintiff's favor ("Confession of Judgment") and their motion for a stay of the execution of the previously entered remand order[1]

---

[1]  On March 26, 2010, the court remanded the case for development of the record. *See Guillermo Lizarraga Customs Broker v. Bureau of Customs and Border Protection*, Court No. 08-00400, Order at 2–4 (Mar. 26, 2010) ("Remand Order").  The Remand

Court No. 08-00400                                                    Page 2

pending the judgment's entry.  Defendants' self-styled Confession of Judgment was filed in response to the pending motion for a preliminary injunction made by Guillermo Lizarraga Customs Broker ("plaintiff" or "Lizarraga").  By his motion, Lizarraga sought, among other things, an order "enjoining defendants from suspending or deactivating [his] broker entry filer code in the port of San Diego, C[alifornia]."  Pl.'s Mem. Supp. Mot. Prelim. Injunc. ("Pl.'s PI Mem.") 1.

    Jurisdiction is had under 28 U.S.C. § 1581(i)(4) (2006).[2] For the reasons set forth below, the court will enter the Confession of Judgment in accordance with this opinion.

## BACKGROUND

I.   Factual Background

    A.   Entry Filer Code

    An entry filer code is a unique, three character code that Customs and Border Protection ("Customs") assigns to a licensed customs broker.  19 C.F.R. § 142.3a(b)(1) (2009).  Filing "entries" means the filing of documentation required to ensure the release of imported merchandise from Customs' custody, or the

---

Order directed the appointment of an administrative law judge to hear evidence and make findings related to plaintiff's injury claim.  *Id.*

[2]   Defendants conceded this Court's jurisdiction over the case in their Answer to the Verified Complaint.  Answer ¶ 1.

Court No. 08-00400                                                    Page 3

act of filing that documentation.  19 C.F.R. § 141.0a(a).

Entries can be filed either manually or electronically through the Automated Broker Interface ("ABI") system.  19 C.F.R. §§ 143.34, 143.32(a).  Currently, ninety-six percent of all entries are filed electronically, and that figure is likely higher for licensed brokers.  *See* Automated Broker Interface (ABI), CBP.GOV, http://www.cbp.gov/xp/cgov/trade/automated/automated_systems/abi/ (last visited Sept. 30, 2010).  Each electronically-filed entry is identified by an entry number created by the broker.  19 C.F.R. § 142.3a(a), (b).  The first three digits of the entry number is the broker's entry filer code.  19 C.F.R. § 142.3a(b)(1).  Accordingly, the entry filer code identifies the broker filing a particular entry.  *Id*.  The ABI system is part of Customs' Automated Commercial System ("ACS") that allows entry filers to both submit data electronically and receive messages from Customs.  19 C.F.R. § 143.1.  In order to file electronically, the broker must have an active entry filer code and be approved for participation in the ABI system.  19 C.F.R. §§ 143.2, 143.34.  The purpose of ABI is "to improve administrative efficiency, enhance enforcement of customs and related laws, lower costs[,] and expedite the release of cargo."  19 C.F.R. § 143.1.  The filer code allows the quick filing of entries via ABI and "provides additional time, 10 business days

from the date Customs releases the goods, to submit estimated duties." Pl.'s PI Mem. 7.

Once the entry information is put into the ACS system, it is processed electronically through a set of "selectivity criteria." Defs.' Mem. Opp. Mot. Prelim. Injunc. ("Defs.' Mem.") 4; *see also* 19 C.F.R. § 143.32(o). The selectivity criteria allow Customs to target certain shipments for examination based on elevated risk factors. Defs.' Mem. 4.

Under 19 C.F.R. § 142.3a(d), "[t]he Assistant Commissioner, Office of International Trade, or his designee may refuse to allow use of an assigned entry filer code if it is misused by the importer or broker." It is the agency action taken by Customs to suspend Lizarraga's entry filer code that is the subject of this case.

B.   Suspension of Plaintiff's Entry Filer Code

On October 21, 2008, the Director of Field Operations at the Otay Mesa Port of Entry in San Diego, California wrote to the Assistant Commissioner of the Office of International Trade and "requested that Mr. Lizarraga's entry filer code be deactivated for misuse." Defs.' Mem. 6 (citing Administrative Record ("AR") 152). Customs then conducted an "internal administrative review" of the Director's request. *See* Defs.' Mem. 6–7 (describing the review process). On November 3, 2008, the Assistant Commissioner

"made the final determination to indefinitely and immediately suspend Mr. Lizarraga's entry filer code" for misuse (a final determination later memorialized in a letter to Mr. Lizarraga dated November 10, 2008). Defs.' Mem. 7; see AR 156. The Assistant Commissioner noted that "[t]he suspension is necessary to prevent Mr. Lizarraga from using his individual filer code to facilitate smuggling narcotics into the Customs territory of the United States and allowing the use of his license, permit, and filer code . . . by Mexican nationals." AR 155. Customs did not provide Lizarraga with notice of its internal administrative review or an opportunity for a hearing, or solicit a written submission from him prior to its final determination.

Instead, by letter dated November 10, 2008,[3] Customs notified plaintiff that, effective November 14, 2008, it would "immediately and indefinitely" suspend his entry filer code. AR 156. The notice cited as authority for defendants' action 19 C.F.R. § 142.3a(d),[4] and stated that the action was "necessary to prevent the misuse of [Lizarraga's] filer code in the conducting of customs business." AR 156. The notice also stated that the suspension was to prevent Mr. Lizarraga from using his individual

---

[3]   Plaintiff received this notice on November 11, 2008. Affidavit of Guillermo Lizarraga ¶ 2.

[4]   Under 19 C.F.R. § 142.3a(d), "[t]he Assistant Commissioner, Office of International Trade, or his designee may refuse to allow use of an assigned entry filer code if it is misused by the importer or broker."

filer code to "facilitate smuggling narcotics" and to ensure that plaintiff's "license, permit, name[,] and filer code are not used by persons who are not employed by [Lizarraga] and authorized to act for [Lizarraga]."  AR 156.

    The notice further stated:

> By requiring you to use the alternative filing procedures found in 19 C[.]F[.]R[.] § 142.3a(e), [Customs] will be able to effectively review the accuracy of the documentation you are submitting for the entry of merchandise.  This will enable you to continue conducting customs business; however, you will be required to file entry/entry summary documentation using customs assigned numbers with estimated duties attached before the merchandise may be released.

AR 156.

    Plaintiff argues that Customs' actions were an unlawful denial of due process:

> Besides being given only a few days notice, Mr. Lizarraga was not afforded the benefit of a hearing or an opportunity to make a written submission prior to being notified of his filer code deactivation.

Pl.'s PI Mem. 4.

    In addition, although Customs stated that plaintiff would be able to conduct his business without using his filer code, Lizarraga insists that:

> Without access to an entry filer code, in today's electronic environment plaintiff cannot realistically compete with all other brokers who have such filer codes.  Without a filer code, plaintiff will be forced to spend

>     many hours manually filing entries, incur
>     delays in processing, and be required to
>     immediately pay estimated duties at the time
>     of filing.  Moreover, because 90% of
>     plaintiff's clients import FDA-regulated
>     produce, manual filing creates additional
>     processing delays, including the fact that
>     for weekends Customs has imposed on Mr.
>     Lizarraga a mere two-hour window to present
>     FDA documentation.

Pl.'s PI Mem. 7 (citations omitted); *see also* Affidavit of Guillermo Lizarraga ("Lizarraga Aff.") ¶¶ 7, 8 (stating that without an entry filer code "it is virtually impossible to conduct business" and "clients will go to other brokers with active filer codes").  Thus, Lizarraga contends that "suspending a broker's entry filer code effectively puts that broker out of business because it is impossible to compete with other licensed brokers with active filer codes." Pl.'s PI Mem. 2.  Accordingly, he argues, suspension of his filer code would be "paramount to a *de facto* suspension or revocation of his license, in which plaintiff has a property interest." Pl.'s PI Mem. 2.

  Plaintiff's arguments are echoed by the amicus curiae brief submitted by the National Customs Brokers and Forwarders Association of America, Inc.:

>     The inability to use its entry filer
>     code is nothing less than crippling to a
>     customs broker's business. . . .
>
>     An importer relies upon its broker for
>     the expedient and accurate filing of customs
>     entries.  In today's high-paced trade
>     environment, speed in clearing goods through

>        Customs is of paramount importance to
>        importers.  Automation in Customs' systems
>        parallels this trend.  Importers simply will
>        not employ the services of a customs broker
>        who can only offer manual entry filing, which
>        will demonstrably result in the delayed
>        release of shipments.  In many ports, the
>        Customs entry personnel who would be required
>        to transmit manual entry data into ACS
>        typically only work from 8 a.m. to 4 p.m.
>        Thus, input into ACS for manual entry filings
>        could only occur during those times.
>        Moreover, Customs no longer assigns personnel
>        dedicated to this task since manual filing
>        has become so infrequent.
>
>        By contrast, an ABI-enabled broker can
>        file the entry at any time and secure the
>        release of the shipment from Customs
>        virtually 24 hours a day.  Customs itself has
>        acknowledged this advantage to ABI, listing
>        "[e]xpedited cargo release" first among
>        several ABI benefits to the trade.

Br. of Amicus Curiae National Customs Brokers and Forwarders Ass'n of America, Inc. in Support of Pl. 4—5 (footnotes omitted); *see also* Mem. Amicus Curiae Pacific Coast Council of Customs Brokers and Freight Forwarders Ass'ns in Support of Pl.'s Mot. 4 ("Lifting of a broker's filer code is tantamount to putting them out of business.").  Thus, plaintiff contends that defendants' actions would "put Mr. Lizarraga out of business by removing his right to file entries electronically via his filer code, thereby degrading his commercial brokers' license to the point of making it virtually useless from a competitive standpoint" which defendants "could not do without first providing statutory due process."  Pl.'s PI Mem. 3.

II.  Proceedings in CIT

On November 13, 2008, plaintiff filed a motion for a temporary restraining order and preliminary injunction seeking to enjoin

> defendants from suspending or deactivating plaintiff's broker entry filer code in the port of San Diego, CA, in order to "prevent" the "misuse" of that filer code.  The threatened action, made on three days notice under the alleged authority of 19 C.F.R. § 142.3a(d), was made without a hearing, an opportunity for petition, or other due process.

Pl.'s PI Mem. 1 (footnote omitted).  On November 14, 2008, after a hearing with both sides present, the court granted plaintiff's motion, issued an order to show cause why a preliminary injunction should not be granted, and set a hearing date.  A briefing schedule was established, which was subsequently modified by the parties.  Thereafter, defendants also agreed to take no action against plaintiff's entry filer code until the court ruled on the preliminary injunction.  *See Lizarraga Customs Broker v. United States*, Court No. 08-00400, Order at 2 (Dec. 23, 2008) (acknowledging defendant's consent not to suspend plaintiff's entry filer code during the time the preliminary injunction is pending); *see also Lizarraga Customs Broker v. United States*, Court No. 08-00400, Order at 1 (Feb. 24, 2010) (reiterating that defendant will not suspend plaintiff's entry

filer code until the court rules on the motion for preliminary injunction).

Also, on November 14, 2008, plaintiff filed his verified complaint alleging, among other things, that he is a licensed customhouse broker and that Customs has "issued a notice . . . that plaintiff's entry filer code will be deactivated effective November 14, 2008." Compl. ¶¶ 2, 5.  Plaintiff's complaint alleges that "Customs' plan to suspend or deactivate plaintiff's entry filer code without any explanation or hearing is effectively a revocation or suspension of plaintiff's broker's license without any showing of good cause and without the benefit of a hearing or other due process  protections." Compl. ¶ 21. In addition to the preliminary injunction, the complaint seeks relief in the form of a declaratory judgment and a permanent injunction restraining the defendants from suspending his entry filer code "without a hearing providing for basic due process . . . ." Compl. ¶ 23(c).

On January 12, 2009, defendants filed their answer to the complaint.  On January 23, 2009, defendants filed the administrative record, and on March 27, 2009, they filed their motions to dismiss and for judgment on the agency record.  Since that time, the parties have briefed requests to file amicus curiae briefs, which the court granted on June 10, 2009.  In addition, the parties have briefed, and the court has heard

arguments on, defendants' motion for a stay pending voluntary remand, which, based on plaintiff's objections, the court denied on August 6, 2009.  Subsequently, the parties briefed and the court granted defendants' request to file an amended answer.  The amended answer was filed on September 17, 2009.  Briefing of the pending motions was complete as of November 13, 2009.  Oral argument was held on February 24, 2010.  At the conclusion of the February 24 hearing, the court stayed proceedings until March 10 to provide the parties an opportunity to pursue settlement.  Thereafter, the parties informed the court that they were unable to reach a settlement during this period.  On March 26, 2010, the court issued an order remanding the matter to Customs solely for the purpose of making a record with respect to plaintiff's claim that the suspension of his entry filer code would be tantamount to a revocation of his broker's license.  *See* Remand Order.

On April 23, 2010, defendants filed the Confession of Judgment[5] in plaintiff's favor and a motion for a stay of the execution of the remand order pending entry of the Confession of Judgment.  Defendants insist that the Confession of Judgment ends

---

[5]   The Confession of Judgment requests "judgment granting relief in favor of plaintiff Guillermo Lizarraga (Mr. Lizarraga), as stated herein and in the proposed order, be entered . . . ."  Confession of Judgment 1.  Further, it offers the following "confession of judgment: we agree not to suspend or deactivate Mr. Lizarraga's entry filer code for any past fact or event (i.e., for any fact or event that will have occurred prior to the entry of the attached proposed Court order.)."  Confession of Judgment 3 (footnote omitted).

Court No. 08-00400                                                    Page 12

the lawsuit because defendant's "agreement" "not to suspend or deactivate Mr. Lizarraga's entry filer code for any past fact or event (i.e., for any fact or event that will have occurred prior to the entry of the attached proposed Court order) . . . , [means that] there is no longer a justiciable case or controversy between the parties and [thus] this action must be dismissed." Confession of Judgment 3.

In response, plaintiff argues that

> While defendants may be free to confess a judgment as to whether they will continue to pursue filer code deactivation under the facts of this case, that does not moot the case, as plaintiff's claims also involve requests for declaratory and injunctive relief aimed at addressing the *legality* of defendant's actions and preventing such illegal actions from being repeated against Mr. Lizarraga.  As the legality of defendants' action remains in dispute, and this Court has the power to issue declaratory and injunctive relief, the action is not moot.

Pl.'s Resp. Def.'s Conf. Judgment ("Pl.'s Resp.") 2.  Plaintiff thus contends that the confession of judgment should be rejected or, alternatively, "must not be construed as rendering moot the claims contained in plaintiff's Complaint, and this action should not be dismissed."  Pl.'s Resp. 2.  Oral argument on the Confession of Judgment took place on July 15, 2010.  *See* Tr. of Conf. Or. Arg. ("Tr. Or. Arg.").

Court No. 08-00400                                                Page 13

DISCUSSION

I.   Mootness

This Court may decide legal questions only in the context of actual cases or controversies. U.S. CONST. art. III, § 2. Where an active case or controversy no longer exists, a case becomes moot. *See Alvarez v. Smith*, __ U.S. __, __, 130 S. Ct. 576, 580—81 (2009)("[A] dispute solely about the meaning of a law, abstracted from any concrete actual or threatened harm, falls outside the scope of the constitutional words "Cases" and "Controversies.") (citations omitted) ("*Alvarez*").

The Supreme Court's admonition, however, is subject to the rule developed to address the situation where a defendant may seek to repeat unlawful behavior. "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant . . . free to return to his old ways." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citation and quotation omitted). Given that, "the test for mootness in cases such as this is a stringent one. . . . A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.10 (1982) (quoting *United*

*States v. Concentrated Exp. Phosphate Ass'n*, 393 U.S. 199, 203 (1968)). Accordingly, in order to demonstrate mootness, it must be shown that unlawful behavior cannot "reasonably be expected to recur."

II. Defendant's Confession of Judgment Moots Plaintiff's Claims

Here, it is apparent that the Confession of Judgment eliminates the "concrete actual or threatened harm" facing Mr. Lizarraga. That is, Customs' concession that it will "not suspend or deactivate Mr. Lizarraga's entry filer code for any past fact or event," when reduced to a judgment, will remove the threat that his business will be harmed as a result of the findings of the internal investigation. Thus, the controversy over Customs' disputed conduct will be rendered moot because any injury resulting from the conduct will be voluntarily checked.

Plaintiff, however, would have the court continue the case to make findings as to the legality of defendants' behavior. To do so, however, would require the court to continue its efforts to create an adequate record with respect to the degree of injury that would result to Mr. Lizarraga's business if his entry filer code were revoked (i.e., whether the indefinite suspension of an entry filer code is a "de facto" suspension or revocation of a broker's license). *See generally* Remand Order. Put another way, in order to determine plaintiff's due process rights, the extent

to which his entry filer code is required for him to carry on a viable business would have to be known.  *See Lowe v. Scott*, 959 F. 2d 323, 339 (1st Cir. 1992) (finding that a doctor had a protected property interest in not only his medical license, but also the part of the license that authorized him to supervise nurse midwives).

   Like Dr. Lowe, plaintiff contends that the deactivation of his entry filer code negatively impacts the broker's license in which he has a protected property interest.  In order to decide this question, however, the court would have to create a factual record.  This was the purpose of the court's Remand Order.  To continue this inquiry in the absence of a live case or controversy, however, would result in the kind of holding the Supreme Court has warned against.  *See Alvarez*, __ U.S. at __, 130 S. Ct. at 580—81.  In other words, it would continue these proceedings even though any findings that would result would have no effect on the concrete question that was the subject of the lawsuit.

   In addition, it has been sufficiently demonstrated that defendants' allegedly wrongful behavior cannot reasonably be expected to recur.  At oral argument defendants represented to the court that Customs would not seek to summarily suspend a broker's entry filer code:  "Well, we know for certain that brokers are entitled to the [Administrative Procedure Act

("APA")][6] if their entry filer code is deactivated, the procedur[al] protections of the APA. So with respect to what occurred to Mr. Lizarraga in this instance, the Customs treatment of Mr. Lizarraga, it's certain that that is not going to occur again." Tr. Or. Arg. 10:13–18. Further, in their amended answer defendants state: "[D]efendants admit that the suspension or deactivation of a broker's entry filer code must comport with 5 U.S.C. § 558." Am. Answer ¶ 22(iii); *see also* Tr. Or. Arg. at 11:7–19 (acknowledging same). Given defendants' representations, the court finds that the allegedly wrongful behavior at issue cannot reasonably be expected to reoccur.

It is important to note, however, that the court is not finding that the due process afforded by 5 U.S.C. § 558 will necessarily be legally sufficient under the facts or

---

[6] Counsel was making reference to 5 U.S.C. § 558(c), entitled "Imposition of Sanctions; determination of applications for licenses; suspension, revocation, and expiration of licenses," which states, in relevant part:

> Except in cases of willfulness or those in which public health, interest, or safety requires otherwise, the withdrawal, suspension, revocation, or annulment of a license is lawful only if, before the institution of agency proceedings therefor, the licensee has been given—
>
> (1) notice by the agency in writing of the facts or conduct which may warrant the action; and
>
> (2) opportunity to demonstrate or achieve compliance with all lawful requirements.

circumstances of a future case.  Thus, the court is not determining whether the provisions of § 558 will provide adequate legal due process under circumstances yet unknown.

## CONCLUSION

For the reasons set forth above, defendants' Confession of Judgment shall be entered in the form determined by the court and plaintiff's pending motion for preliminary injunction is therefore declared moot and accordingly denied.

/s/ Richard K. Eaton<br>Richard K. Eaton

Dated:    October 4, 2010
          New York, New York

```
                UNITED STATES COURT OF INTERNATIONAL TRADE

_____
LIZARRAGA CUSTOMS              :
BROKER,                        :
                               :
            Plaintiff,         :
                               : Before: Richard K. Eaton, Judge
                               :
      v.                       : Court No. 08-00400
                               :
BUREAU OF CUSTOMS AND BORDER   :
PROTECTION, U.S. DEPARTMENT OF :
HOMELAND SECURITY; and ROSA    :
HERNANDEZ, PORT DIRECTOR,      :
OTAY MESA, CALIFORNIA,         :
                               :
            Defendants.        :
_____:
```

<u>JUDGMENT</u>

This case having been submitted for decision and the court, after deliberation, having rendered a decision therein; now, in conformity with that decision, it is hereby

ORDERED that judgment granting relief in favor of plaintiff is hereby entered; and it is further

ORDERED that the Remand Order dated March 26, 2010 is declared moot, and thus the parties are relieved from compliance therewith; and it is further

ORDERED that the defendants shall not suspend or deactivate plaintiff's entry filer code for any past fact or event (i.e., for any fact or event that will have occurred prior to the entry of this judgment); and it is further

ORDERED that the suspension, deactivation, revocation or similar act or threat thereof of a broker's entry filer code must

comport, at a minimum, with 5 U.S.C. § 558 (2006); and it is further

ORDERED that plaintiff's motion for preliminary injunction is declared moot and accordingly denied.

                                                                    /s/ Richard K. Eaton
                                                                   Richard K. Eaton

Dated:    October 4, 2010
            New York, New York