Slip Op. 11- 128

UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____
                              :
LIZARRAGA CUSTOMS BROKER,     :
                              :
            Plaintiff,        :
                              : Before: Richard K. Eaton, Judge
                              :
      v.                      : Court No. 08-00400
                              :
BUREAU OF CUSTOMS AND BORDER  :
PROTECTION, U.S. DEPARTMENT OF:
HOMELAND SECURITY; and ROSA   :
HERNANDEZ, PORT DIRECTOR,     :
OTAY MESA, CALIFORNIA,        :
                              :
            Defendants.       :
_____:
```

OPINION AND ORDER

[Plaintiff's application for fees and other expenses pursuant to Equal Access to Justice Act is granted.]

Dated: October 17, 2011

   *Sandler, Travis & Rosenberg, P.A.* (*Arthur K. Purcell* and *Kenneth N. Wolf*), for plaintiff.

   *Tony West*, Assistant Attorney General; *Barbara S. Williams*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Justin R. Miller*); Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection (*Nancy Gudel*), for defendants.

   Eaton, Judge: This case is before the court on plaintiff Guillermo Lizarraga's ("plaintiff" or "Lizarraga") application for fees and other expenses pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d) (2006).  The application follows the defendants' Confession of Judgment dated

April 30, 2010 (the "Confession of Judgment") and the subsequent entry of judgment in plaintiff's favor. *See Lizarraga Customs Broker v. U.S. Customs & Border Protect.*, 34 CIT __, Slip Op. 10-113 (Oct. 4, 2010). Defendants, the Bureau of Customs and Border Protection ("Customs"), the U.S. Department of Homeland Security, and Rosa Hernandez, Port Director for the Otay Mesa Port of Entry, San Diego, California (collectively, "defendants"), oppose the application.

For the reasons set forth below, the court grants plaintiff's application for fees.

## BACKGROUND

I.   Entry Filer Code

An entry filer code is a unique, three character code that Customs assigns to a licensed customs broker. 19 C.F.R. § 142.3a(b)(1) (2011). Filing "entries" means the filing of documentation required to ensure the release of imported merchandise from Customs' custody, or the act of filing that documentation. *Id.* § 141.0a(a).

Entries can be filed either manually or electronically through the Automated Broker Interface ("ABI") system. *Id.* §§ 143.34, 143.32(a). Ninety-six percent of all entries are filed electronically, and that figure is likely higher for licensed brokers. *See Automated Broker Interface (ABI)*, CBP.gov,

http://www.cbp.gov/xp/cgov/trade/automated/automated_systems/abi/ (last visited Sept. 20, 2011).  Each electronically-filed entry is identified by an entry number created by the broker.  19 C.F.R. § 142.3a(a), (b).  The first three digits of the entry number are the broker's entry filer code.  *Id.* § 142.3a(b)(1). Accordingly, the entry filer code identifies the broker filing a particular entry.  The ABI system is part of Customs' Automated Commercial System that allows entry filers to both submit data electronically and receive messages from Customs.  *Id.* § 143.1. In order to file electronically, the broker must have an active entry filer code and be approved for participation in the ABI system.  *Id.* §§ 143.2, 143.34.  The purpose of ABI is "to improve administrative efficiency, enhance enforcement of customs and related laws, lower costs[,] and expedite the release of cargo." *Id.* § 143.1.

II.  Suspension of Plaintiff's Entry Filer Code

Mr. Lizarraga is a licensed customs broker, and in 2008 had an assigned entry filer code.  Under 19 C.F.R. § 142.3a(d), "[t]he Assistant Commissioner, Office of International Trade, or his designee may refuse to allow use of an assigned entry filer code if it is misused by the importer or broker."  On October 21, 2008, the Director of Field Operations at the Otay Mesa Port of Entry in San Diego, California wrote to the Assistant

Commissioner of the Office of International Trade and asked that

Mr. Lizarraga's entry filer code be deactivated for misuse.  Mem.

from Dir. Field Operations to Asst. Comm'r, Office of Int'l

Trade, Oct. 21, 2008 (C.R. Doc. 152).  Although it did not

compile a contemporaneous record,[1] Customs has represented that

---

[1]      On January 23, 2009, Customs filed, what it identified
as, the administrative record.  The record was comprised of three
looseleaf binders containing 156 documents amounting to roughly
1,000 pages.  Admin. R. (C.R. Doc. 1-156).  Of these, the
Assistant Commissioner of the Office of International Trade had
before him one document consisting of four pages when he made the
determination to suspend Mr. Lizarraga's entry filer code.  *See*
Baldwin Decl., Mar. 3, 2010.  The court thoroughly reviewed the
documents and on February 24, 2010, conducted a hearing at which
counsel for defendants reviewed the documents in the record in
open court.  Tr. Or. Arg., Feb. 24, 2010, 6:10-28:2.  The first
two volumes of the record contained 122 documents, and about 800
pages whose purpose appeared to be to demonstrate to the court
that Mr. Lizarraga was a sloppy bookkeeper and a thorn in the
side of Customs generally, e.g.:

> THE COURT: Volume 1 seems to have a lot of audits of
> Mr. Lizarraga which seem to me to be completely off the
> point.  The audits find that he isn't conducting
> business the way [Customs] might have hoped.  They make
> the findings.  They ask him to correct things.  He
> corrects them or doesn't correct them.  There are
> letters back and forth.  None of these things seem to
> have, at least in Volume 1 -- I've had a lot of trouble
> figuring out how the [entry filer] code was involved.

Tr. Or. Arg., Feb. 23, 2010, 7:8-7:15.  The first document to
which counsel for the defendants pointed as having to do with the
suspension of the entry filer code was Document 146, which was
found at about eighty percent of the way through Volume 3.  This
document consists of notes, compiled with the assistance of
counsel, that purport to memorialize previous discussions.  Tr.
Or. Arg., Feb. 23, 2010, 9:16-10:19.  Thus, while there was,
arguably, some kind of "internal administrative review," no
record was made of it while it was being conducted.  For
instance, with respect to evidence that Mr. Lizarraga had

it then conducted an "internal administrative review" of the
Director's request.  On November 3, 2008, the Assistant
Commissioner "made the final determination to indefinitely and
immediately suspend Mr. Lizarraga's entry filer code" for misuse
(a final determination later memorialized in a letter to Mr.
Lizarraga dated November 10, 2008).  *See* Letter from Port Dir. to
Lizarraga, Nov. 10, 2008 (C.R. Doc. 156) ("Port Dir. Letter").
The Assistant Commissioner stated that "[t]he suspension is

---

provided his entry filer code for use by Mexican nationals,
document 152 was prepared by counsel after the fact:

> [COUNSEL FOR DEFENDANTS]: That information was based
> upon interviews that I had conducted with individuals
> involved in a transaction and then that information was
> then transmitted to Customs, the trade aspect of it.
> So there wouldn't be any -- 152 is a summary of the
> conversations between [U.S. Immigration and Customs
> Enforcement] and Customs.
> THE COURT: Let me see if I've got this straight.  You
> provided me with these three volumes.  They're supposed
> to represent the record but that there is nothing . . .
> in the record to back up this statement [regarding
> providing the entry filer code to Mexican nationals]?
> [COUNSEL FOR DEFENDANTS]: 152 would be the documentary
> evidence.
> THE COURT: 152 is just -- so there's nothing to back up
> the material that [the Assistant Commissioner] made his
> determination on other than 152?
> [COUNSEL FOR DEFENDANTS]: Other than the conversations
> between individuals.
> THE COURT: But they're not the record.
> [COUNSEL FOR DEFENDANTS]: No, Your Honor, they're not.

Tr. Or. Arg., Feb. 23, 2010, 10:15–11:6.  It is worth noting
that the Assistant Commissioner did not, in fact, even have
document 152 before him when he made his determination.  *See*
Baldwin Decl., Mar. 3, 2010.

necessary to prevent Mr. Lizarraga from using his individual filer code to facilitate smuggling narcotics into the Customs territory of the United States and allowing the use of his license, permit, and filer code . . . by Mexican nationals." Mem. from Asst. Comm'r, Office of Int'l Trade to Dir. Field Operations (C.R. Doc 155) ("Asst. Comm'r Mem."). Customs did not provide Mr. Lizarraga with notice of its internal administrative review or an opportunity for a hearing, nor did it solicit a written submission from him prior to its final determination.

Instead, by letter dated November 10, 2008,[2] Customs notified plaintiff that, effective November 14, 2008, it would "immediately and indefinitely" suspend his entry filer code. Port Dir. Letter (C.R. Doc. 156). The notice cited 19 C.F.R. § 142.3a(d) as authority for defendants' action, and stated that the action was "necessary to prevent the misuse of [Lizarraga's] filer code in the conducting of customs business." Port Dir. Letter (C.R. Doc. 156). The notice also stated that the suspension was to prevent Mr. Lizarraga from using his individual filer code to "facilitate smuggling narcotics," and to ensure that plaintiff's "license, permit, name[,] and filer code are not used by persons who are not employed by [Lizarraga] and authorized to act for [Lizarraga]." Port Dir. Letter (C.R. Doc.

---

[2]     Plaintiff received this notice on November 11, 2008. Lizarraga Aff. ¶ 2.

156).

        The notice further stated:

        By requiring you to use the alternative filing
        procedures found in 19 CFR § 142.3a(e), [Customs] will
        be able to effectively review the accuracy of the
        documentation you are submitting for the entry of
        merchandise.  *This will enable you to continue
        conducting customs business; however, you will be
        required to file entry/entry summary documentation
        using customs assigned numbers with estimated duties
        attached before the merchandise may be released*.

Port Dir. Letter (C.R. Doc. 156).

        Thus, Customs stated that, even though he could no longer

use his entry filer code, Mr. Lizarraga would nonetheless be able

to continue to conduct his business as a customs broker.


III. Proceedings in CIT

        On November 13, 2008, Mr. Lizarraga sought to halt the

suspension of his entry filer code by filing a motion for a

temporary restraining order ("TRO") and a preliminary injunction.

At the November 14, 2008 hearing, defendants opposed the entry of

the TRO, in part, because they claimed the case involved

America's national security.  As counsel for defendants stated:

        The importation of narcotics under an importer's filer
        code or a broker's filer code is illegal activity and
        effectively it represents a situation where the balance
        of hardships once those drugs come into the country
        would be adverse to the United States and the national
        security of the United States . . . . [N]arcotics were
        imported under this filer code.  So Customs has every
        right at this juncture to be concerned about the abuse
        or misuse of that filer code and every right to take

every precaution available to it to insure national
security for this country.

Tr. Or. Arg., Nov. 14, 2008, 8:15-9:1.

After the hearing with both sides present, the court granted
plaintiff's motion for a TRO, issued an order to show cause why a
preliminary injunction should not be granted, and set a hearing
date.  A briefing schedule was established, which was
subsequently modified by the parties.  Thereafter, defendants
agreed to take no action against plaintiff's entry filer code
until the court ruled on the preliminary injunction.  *See* Order
at 2, *Lizarraga Customs Broker v. U.S. Customs & Border Protect.*,
No. 08-00400 (Dec. 23, 2008) (acknowledging defendants' consent
not to suspend plaintiff's entry filer code during the time the
preliminary injunction was pending); *see also* Order at 1,
*Lizarraga Customs Broker v. U.S. Customs & Border Protect.*, No.
08-00400 (Mar. 1, 2010) (reiterating that defendants would not
suspend plaintiff's entry filer code until the court ruled on the
motion for preliminary injunction).

Further, on November 13, 2008, plaintiff filed his verified
complaint alleging, among other things, that he was a licensed
customs broker and that Customs has "issued a notice . . . that
plaintiff's entry filer code will be deactivated effective
November 14, 2008."  Compl. ¶ 5.  Plaintiff's complaint alleged
that "Customs' plan to suspend or deactivate plaintiff's entry

filer code without any explanation or hearing was effectively a

revocation or suspension of plaintiff's broker's license without

any showing of good cause, and without the benefit of a hearing

or other due process protections." Compl. ¶ 21.  In addition to

the preliminary injunction, the complaint sought relief in the

form of a declaratory judgment and a permanent injunction

restraining the defendants "from suspending his entry filer code

without a hearing providing for basic due process, in accordance

with the letter or spirit of 19 U.S.C. § 1641(d)(2)(B)."[3]  Compl.

---

[3]     Had Customs actually sought to revoke Mr. Lizarraga's
broker's license it would have had to comply with 19 U.S.C.
§ 1641(d)(2)(B) (2006) which provides:

> **Revocation or suspension**
>       The Customs Service may, for good and sufficient
> reason, serve notice in writing upon any customs broker
> to show cause why a license or permit issued under this
> section should not be revoked or suspended.  The notice
> shall be in the form of a statement specifically
> setting forth the grounds of the complaint, and shall
> allow the customs broker 30 days to respond.  If no
> response is filed, or the Customs Service determines
> that the revocation or suspension is still warranted,
> it shall notify the customs broker in writing of a
> hearing to be held within 30 days, or at a later date
> if the broker requests an extension and shows good
> cause therefor, before an administrative law judge
> appointed pursuant to section 3105 of title 5 [5 U.S.C.
> § 3105 (2006)], United States Code, who shall serve as
> the hearing officer.  If the customs broker waives the
> hearing, or the broker or his designated representative
> fails to appear at the appointed time and place, the
> hearing officer shall make findings and recommendations
> based on the record submitted by the parties.  At the
> hearing, the customs broker may be represented by
> counsel, and all proceedings, including the proof of
> the charges and the response thereto shall be presented

¶ 23(c).

On January 12, 2009, defendants filed their Answer to the
Complaint.  On January 23, 2009, defendants filed the
administrative record, and on March 27, 2009, they filed their
motion to dismiss and for judgment on the agency record.
Thereafter, on July 13, 2009, defendants moved for a voluntary
remand.  In their papers seeking the voluntary remand, defendants
stated:

> Remand is particularly appropriate in this case, as we
> have been advised by Customs that upon remand, *the
> agency will issue a new notice of action and then allow
> Mr. Lizarraga to administratively challenge the
> agency's action.  The new notice of action will include
> a description of the procedures Mr. Lizarraga may use
> to contest Custom's new notice of action.*  If Mr.
> Lizarraga decides to administratively challenge the
> agency's action, the agency will review the issues
> presented by Mr. Lizarraga and make a new determination
> as to whether his entry filer code should be suspended

---

> with testimony taken under oath and the right of cross-
> examination accorded to both parties.  A transcript of
> the hearing shall be made and a copy will be provided
> to the Customs Service and the customs broker; which
> shall thereafter be provided reasonable opportunity to
> file a post-hearing brief.  Following the conclusion of
> the hearing, the hearing officer shall transmit
> promptly the record of the hearing along with the
> findings of fact and recommendations to the Secretary
> for decision.  The Secretary will issue a written
> decision, based solely on the record, setting forth the
> findings of fact and the reasons for the decision.
> Such decision may provide for the sanction contained in
> the notice to show cause or any lesser sanction
> authorized by this subsection, including a monetary
> penalty not to exceed $30,000, than was contained in
> the notice to show cause.

or deactivated.

Defs.' Mot. to Stay & for Vol. Remand ("Defs.' Remand Mot.") 3.
Thus, as early as July 13, 2009, defendants acknowledged that Mr.
Lizarraga was entitled to an opportunity to be heard, and that he
had been denied this due process by Customs' actions.

Plaintiff objected that the proposed administrative review
did not address all of Mr. Lizarraga's claims.  Pl.'s Resp. to
Defs.' Remand Mot. 1 ("Inherent in defendants' otherwise vague
proposal for remand is an admission that [Customs] failed to
provide due process to Mr. Lizarraga as required by law. . . .
Under the Administrative Procedure[] Act ("APA"), the challenged
agency action must be held unlawful and set aside because it was
undertaken contrary to law.  That result is consistent with law
and Mr. Lizarraga's legitimate expectation of finality after nine
months of litigation.").  Therefore, because Customs' offer of an
opportunity to be heard was not accompanied by a concession that
Customs' previous actions should be set aside, plaintiff did not
consent to the remand.  On August 6, 2009, the court denied
defendants' remand motion.  Order at 2, *Lizarraga Customs Broker
v. U.S. Customs & Border Protect.*, No. 08-00400 (Aug. 6, 2009)
("[T]he stay would not end in a determination concerning the
actions already taken by [Customs].").

Subsequently, the parties briefed and the court granted
defendants' request to file an amended answer, which was filed on

September 17, 2009.  In their Amended Answer, defendants stated:

"defendants admit that the suspension or deactivation of a

broker's entry filer code must comport with 5 U.S.C. § 558."  Am.

Answer ¶ 22(iii); *see also* Tr. Or. Arg., July 15, 2010, 11:7–19

(acknowledging same).  The significance of the citation to 5

U.S.C. § 558 is that this section is part of the Administrative

Procedure Act, and provides for the "annulment of a licence" only

after the "licensee has been given—(1) notice by the agency in

writing of the facts or conduct which may warrant action; and (2)

opportunity to demonstrate or achieve compliance with all lawful

requirements."  5 U.S.C. § 558(c).

Briefing of the pending motions was complete as of November

13, 2009.  Oral argument was held on February 24, 2010.  At the

conclusion of the February 24th hearing, the court stayed

proceedings until March 10 to provide the parties an opportunity

to pursue settlement.  Thereafter, the parties informed the court

that they were unable to settle the case.  On March 26, 2010, the

court issued an order remanding the matter to Customs solely for

the purpose of making a record before an administrative law judge

with respect to plaintiff's claim that the suspension of his

entry filer code would be tantamount to a revocation of his

broker's license.  Order at 2–4, *Lizarraga Customs Broker v. U.S.*

*Customs & Border Protect.*, No. 08-00400 (Mar. 26, 2010).

On April 23, 2010, defendants filed their Confession of

Judgment in plaintiff's favor and moved to stay the execution of the remand order pending entry of the judgment itself.  The sole reason the defendants gave for proffering their Confession of Judgment was: "We have engaged in a cost/benefit analysis with respect to retaining and administering an ALJ, and based upon our analysis we offer the following Confession of Judgment . . . ." Confession of Judgment 2-3.

The substantive portion of the Confession of Judgment requested a "judgment granting relief in favor of plaintiff Guillermo Lizarraga (Mr. Lizarraga), as stated herein and in the proposed order, be entered."  Confession of Judgment 1.  Further, it offered the following "Confession of Judgment: we agree not to suspend or deactivate Mr. Lizarraga's entry filer code for any past fact or event (i.e., for any fact or event that will have occurred prior to the entry of the attached proposed Court order.)."  Confession of Judgment 3 (footnote omitted).  By these words, Customs effectively "set aside" its previous actions taken to suspend Mr. Lizarraga's entry filer code.

Further, at oral argument defendants represented to the court that Customs would not seek to summarily suspend a broker's entry filer code:

> Well, we know for certain that brokers are entitled to
> the APA if their entry filer code is deactivated, the
> procedur[al] protections of the APA.  So with respect
> to what occurred to Mr. Lizarraga in this instance, the
> Customs treatment of Mr. Lizarraga, it's certain that

that is not going to occur again.

Tr. Or. Arg., July 15, 2010, 10:13–18.  Counsel's reference to the APA was to the provisions of 5 U.S.C. § 558.

Thereafter, in *Lizarraga*, the court found that the Confession of Judgment mooted plaintiff's motion for a preliminary injunction because it "remove[d] the threat that his business will be harmed as a result of the findings of the internal investigation."  *Lizarraga*, 34 CIT at __, Slip Op. 10-113, at 14 (Oct. 4, 2010).  The accompanying judgment ordered:

> judgment granting relief in favor of plaintiff is hereby
> entered; . . . the Remand Order dated March 26, 2010 is
> declared moot, and thus the parties are relieved from
> compliance therewith; . . . the defendants shall not
> suspend or deactivate plaintiff's entry filer code for
> any past fact or event (i.e., for any fact or event that
> will have occurred prior to the entry of this judgment);
> and . . . the suspension, deactivation, revocation or
> similar act or threat thereof of a broker's entry filer
> code must comport, at a minimum, with 5 U.S.C. § 558
> (2006).

Judgment at 1–2, *Lizarraga Customs Broker v. U.S. Customs & Border Protect.*, No. 08-00400 (Oct. 4, 2010).

On December 21, 2010, plaintiff filed a Form 15 application for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) and USCIT R. 54.1, seeking a reimbursement of attorney's fees in the amount of $223,305.83 and an additional $2,850.16 for costs and expenses, for a total of $226,155.99.

DISCUSSION

I.   Equal Access to Justice Act Framework

Under EAJA, "a court shall award to a prevailing party other than the United States fees and other expenses . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A) (2006).  A position is substantially justified if it is "justified to a degree that could satisfy a reasonable person" and has a "'reasonable basis in both law and fact.'"  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation omitted).  The government's "position" includes the underlying actions of any administrative agency, as well as the government's litigation arguments.  *Smith v. Principi*, 343 F.3d 1358, 1361-62 (Fed. Cir. 2003).  Although the "position" of the government involves prelitigation conduct as well as the litigation itself, "only one threshold determination for the entire civil action is to be made."  *Comm'r, Immigration & Naturalization Serv. v. Jean*, 496 U.S. 154, 159 (1990).

Pursuant to EAJA, an application for fees and expenses must be granted when: "(1) the claimant is a prevailing party; (2) the government's position during the administrative process or during litigation was not substantially justified; (3) no special circumstances make an award unjust; and (4) the fee application is timely and supported by an itemized fee statement."  *Former*

*Emps. of Tyco Elecs., Fiber Optics Div. v. U.S. Dep't of Labor*, 28 CIT 1571, 1577, 350 F. Supp. 2d 1075, 1081 (2004) (citing 28 U.S.C. § 2412(d)(1)(A)-(B)).  Furthermore, the court "shall not . . . award[] in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A)(ii).


II.  Plaintiff's Eligibility for Fee-Shifting Based on Case's Procedural History

        Defendants begin their response to Mr. Lizarraga's application by arguing that the court need not engage in the four-part analysis, outlined above in *Tyco*, because the plain language of the EAJA statute demonstrates that the fee-shifting provisions do not extend to issues that were never addressed by the court:

> Ultimately, the Court never reached the merits of Mr. Lizarraga's claims or the merits of the Government's dispositive motions as the Government filed a Confession of Judgment that disposed of the case prior to the effectuation of the Remand Order.  Specifically, under the Confession of Judgment, the Government agreed not to suspend or deactivate Mr. Lizarraga's entry filer code for any past fact or event.

Defs.' Mem. in Opp. to Pl.'s Appl. ("Defs.' Mem.") 3.  In other words, defendants assert that the plaintiff may seek EAJA reimbursement only for claims actually considered by the court.

Here, defendants insist that Mr. Lizarraga is not entitled to an award of fees because the court never determined if he was entitled to the full due process protections he would have received had Customs sought to revoke his broker's license.

In making their argument, defendants contend that entertaining Mr. Lizarraga's application would put the court "'in the position of conducting essentially de novo review of the entire case for purposes of the fee litigation, contrary to the command against 'spawn[ing] a second litigation' of the Supreme Court and to the far more streamlined 'substantial justification review' envisioned by the EAJA itself.'" Defs.' Mem. 10 (quoting *Hardisty v. Astrue*, 592 F.3d 1072, 1078 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 2443 (2011); *see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 609 (2001) ("We have also stated that 'a request for attorney's fees should not result in a second major litigation, and have accordingly avoided an interpretation of fee-shifting statutes that would have 'spawned a second litigation of significant dimension.'" (internal citations omitted)).

The court finds that the *Hardisty* rationale does not extend to the circumstances of this case. In *Hardisty*, the plaintiff challenged his denial of supplemental disability income by the Social Security Administration on several grounds. *Hardisty*, 592 F.3d at 1075. The district court, however, remanded solely on

the basis that the agency improperly discredited the plaintiff's
testimony.  In doing so, the court chose not to consider the
other arguments raised by him.  *Id.*  When the plaintiff later
sought EAJA fees, the court concluded that, because the agency
was "substantially justified" in contesting Hardisty's
credibility, he was not entitled to attorney's fees on the issue
of his testimony.  In addition, the court declined to award
attorney's fees based on the other arguments that it had chosen
not to reach.  *Id.* at 1077 ("Nothing in these provisions extends
fee-shifting to issues not adjudicated.  Section 2412(d)(1)(A)
provides no indication that attorneys' fees should be awarded
with respect to positions of the United States challenged by the
claimant but unaddressed by the reviewing court.").  The Court of
Appeals for the Ninth Circuit affirmed the latter ruling.

The posture of this case distinguishes it from *Hardisty*.
First, as defendants themselves pointed out in their papers
seeking entry of the Confession of Judgment,

> [h]ere . . . we agree not to suspend or deactivate Mr.
> Lizarraga['s] entry filer code for any past fact or
> event.  This is the sum of the relief that is legally
> available to Mr. Lizarraga regarding his challenge to
> the merits of [Customs'] determination to suspend or
> deactivate his code . . . .  Accordingly, pursuant to
> Article III, there is no longer a justiciable case or
> controversy with respect to this claim.

Confession of Judgment 4.  Thus, as defendants acknowledge, the
question of the legality of Customs' actions in suspending Mr.

Lizarraga's entry filer code was before the court and resolved in his favor.

In addition, while defendants characterize the due process claim as being rendered moot, for purposes of this application that is not precisely the case.  That is, while defendants assert that they did not concede the issue of whether Mr. Lizarraga was entitled to the procedural protections of section 1641(d), Defs.' Mem. 3, they did concede the larger due process point.

Indeed, throughout this litigation, Customs has progressively acknowledged that Mr. Lizarraga was entitled to, and denied, due process at the administrative level.  Thus, in their Motion for a voluntary remand, Amended Answer, statements in open court, and Confession of Judgment, the defendants effectively conceded that Mr. Lizarraga had been denied adequate due process administratively.  Defendants first made this concession by seeking a voluntary remand to revisit Customs' decision to suspend Mr. Lizarraga's entry filer code, and offering to provide him with notice and an opportunity to challenge Customs' actions.  Defendants' concession became more specific by admitting that he was entitled to the protections of 5 U.S.C. § 558, Amend. Answer ¶ 22(iii), and making similar statements in open court during their motion for entry of the Confession of Judgment.  Finally, in the Confession of Judgment, Customs annulled its acts at the administrative level and

provided guarantees of due process in the future.  Therefore,
even though the Confession of Judgment prevented the court from
ruling on the exact nature of the required due process, the
overarching issue (i.e., that Mr. Lizarraga was entitled to some
due process protection) was admitted by Customs.

In fact, counsel for defendants conceded that not only would
Mr. Lizarraga be entitled to the benefits of the APA should he
again find himself in the situation presented here, but that
"brokers are entitled to the APA."  Tr. Or. Arg., July 15, 2010,
10:13-14.  This admission was then included in the declaratory
portion of the court's judgment ending the case.  Judgment at
1-2, *Lizarraga Customs Broker v. U.S. Customs & Border Protect.*,
No. 08-00400 (Oct. 4, 2010) ("the suspension, deactivation,
revocation or similar act or threat thereof of a broker's entry
filer code must comport, at a minimum, with 5 U.S.C. § 558
(2006)."  Thus, although the court may not have ruled on the
merits of the precise limits of the due process to which Mr.
Lizarraga was entitled (i.e., whether he was entitled to the same
level of due process that he would have been had Customs wished
to revoke his broker's license), the material issues in this case
were resolved in plaintiff's favor.  This is demonstrated by the
judgment, which granted relief with respect to Customs' acts in
suspending Mr. Lizarraga's entry filer code and as to the minimum
due process requirements to be afforded brokers thereafter.

Moreover, unlike the Court in *Hardisty*, the court was fully

engaged with and cognizant of all of the due process arguments in

this case throughout the litigation.  This was not the situation

in *Hardisty*, a primary concern of the Ninth Circuit:

> Such an inquiry requires the district court to decide
> whether government positions it may not have evaluated
> at all were in fact substantially justified.  That puts
> the district court in the position of conducting
> essentially de novo review of the entire case for
> purposes of the fee litigation . . . .  We decline to
> impose such burdens on district courts.

*Hardisty*, 592 F.3d at 1078.  That is not the case here, however,

because the court reviewed all of the relevant facts and law in

the case.  Specifically, on February 24, 2010, the court

conducted a hearing at which the administrative record was

examined in detail.  In addition, the opinion accepting

defendants' Confession of Judgment discussed both the revocation

of the entry filer code and due process considerations.

Therefore, addressing this EAJA application will not "spawn a

second litigation" that raises facts and legal issues unfamiliar

to the court.

Important policy reasons also support allowing EAJA

applications to proceed in cases conceded by the government

before resolution by a court.  As the Supreme Court emphasized,

"[t]he clearly stated objective of the EAJA is to eliminate

financial disincentives for those who would defend against

unjustified governmental action and thereby to deter the

unreasonable exercise of Government authority." *Ardestani v.*
*Immigration & Naturalization Srv.*, 502 U.S. 129, 138 (1991).  The
government, therefore, should not be able to avoid liability
simply by precluding decisions on the merits.  In *Foster v.*
*Boorstin*, 561 F.2d 340 (D.C. Cir. 1977), the Court, although
discussing fee-shifting in the context of a Title VII case that
did not advance past the filing of a complaint, noted that:

> [i]f the government could avoid liability for fees
> merely by conceding the cases before final judgment,
> the impact of the fee provision would be greatly
> reduced.  The government would remain free to assert
> boilerplate defenses, and private parties who served
> the public interest by enforcing the Act's mandates
> would be deprived of compensation for the undertaking.
> Thus, a general bar to awards of fees in cases resolved
> before final judgment cannot be accepted by the court.

*Foster*, 561 F.2d at 343 (citations omitted).  Similar concerns
are present here.

Therefore, the court holds that plaintiff is not foreclosed
from seeking EAJA fees for the reasons advanced by defendants.
As such, a review of the four-part analysis set forth in *Tyco*
*Electronics* is warranted.


A. Prevailing Party Status

The defendants do not dispute that plaintiff was the
prevailing party in this action.  Further, as plaintiff points
out, an EAJA applicant can be the "prevailing party" for purposes
of section 2412 where the requested relief is granted and the

case declared moot.  Pl's Br. in Supp. of Mot. for Att'y's Fees &
Expenses ("Pl.'s Br.") 6 (citing *Atochem v. United States*, 9 CIT
207, 209, 609 F. Supp. 319, 321 (1985); *Consol. Int'l Auto., Inc.
v. United States*, 16 CIT 692, 695, 797 F. Supp. 1007, 1010
(1992)).  Specifically, plaintiff cites *Consolidated
International* for the proposition that "a court should look to
the substance of the litigation, and not merely to the technical
disposition of the case or motion."  *Consol. Int'l*, 16 CIT at
695, 797 F. Supp. at 1010.  Mr. Lizarraga also relies on *United
States v. Hitachi Am., Ltd.*, 24 CIT 497, 101 F. Supp. 2d 830
(2000), where this Court noted that a "prevailing party" is "one
who 'succeeds on any significant issue in litigation which
achieves some of the benefit the parties sought in bringing
suit,' not success on each issue sued."  *Hitachi*, 24 CIT at 498,
101 F. Supp. 2d at 832 (quoting *Hensley v. Eckerhart*, 461 U.S.
424, 433 (1983)).

With these principles in mind, plaintiff argues that he
"prevailed" in this litigation because a judgment was entered in
his favor; he was successful in setting aside Customs' earlier
action by blocking it from deactivating his entry filer code
based upon any past facts or events; and further, that the case
established a minimum level of due process to which a broker is
entitled before his license can be suspended or deactivated.
Pl.'s Br. 8; *see also Lizarraga*, 34 CIT at __, Slip Op. 10-113,

at 16.

　　The court agrees with plaintiff that he was the "prevailing
party."  Only the most mechanical interpretation of that term
could lead to a different conclusion based on the relief
initially requested by Lizarraga and the final resolution of this
case.  In the demand for relief in his Complaint, plaintiff
sought preliminary and permanent injunctions restraining the
defendants from "suspending or deactivating plaintiff's entry
filer code."  Compl. ¶ 23(b), (c).  Likewise, the final judgment
in this case ordered that defendants shall "not suspend or
deactivate plaintiff's entry filer code for any past fact or
event," thus effectively setting aside Customs' actions.
*Lizarraga*, 34 CIT at __, Slip Op. 10-113, at 14.  In addition,
defendants' remand request, their Amended Answer, defense
counsel's representations in open court, and the judgment itself
establish that, as a minimum, a broker similarly situated to Mr.
Lizarraga is entitled to the benefits of the APA.  *Lizarraga*, 34
CIT at __, Slip Op. 10-113, at 16-17.  Looking to the "substance
of the litigation" then, Mr. Lizarraga clearly prevailed in
ultimately securing this permanent guarantee from the defendants.
He thus unquestionably "'succeed[ed] on [a] significant issue in
litigation,'" and "'achieve[d] some of the benefit [he] sought in
bringing suit.'"  *See Hitachi*, 24 CIT at 498, 101 F. Supp. 2d at
832 (citations omitted).

Therefore, plaintiff has satisfied the EAJA "prevailing party" element.


B. Substantial Justification

To determine if a position is "substantially justified," the Federal Circuit "requires that the Government show that it was *clearly* reasonable in asserting its position, *including its position at the agency level*, in view of the law and the facts." *Gavette v. Office of Pers. Mgmt.*, 808 F.2d 1456 (Fed. Cir. 1986); *see also Shinyei Corp. of Am. v. United States*, No. 2010-1178, 2010 WL 4146384, at *3 (Fed. Cir. Oct. 22, 2010) (quoting *Pierce*, 487 U.S. at 565) ("A position is substantially justified if it is 'justified to a degree that could satisfy a reasonable person' and has a 'reasonable basis in law and fact.'"). The defendants bear the burden of demonstrating that their position was substantially justified. *See Nakamura v. Heinrich*, 17 CIT 119, 120 (1993) (not reported in the Federal Supplement) (citing *Gavette*, 808 F.2d at 1467).

> Courts are often reluctant to award fees because they have operated so long under the American rule prohibiting fee-shifting. In fact, the reluctance of the courts to award fees prompted the adoption of the language in Rule 37 on which this standard is based. Under these circumstances, it is particularly appropriate to place the burden on the government to prove the reasonableness of its actions. To do so encourages parties to contest action which they believe to be unreasonable and thereby serves to refine public policy.

*Gavette*, 808 F.2d at 1465–66 (quoting H.R. Rep. No. 1418, at 14 (1980)).

Plaintiff insists that defendants have not met their burden primarily because of Customs' actions at the administrative level.  Looking at defendants' administrative position, Mr. Lizarraga stresses that defendants failed to give him notice of Customs' proceeding, or to offer him any opportunity to defend himself.  Pl.'s Br. 8.  He relies on *Bonanza Trucking Corporation v. United States*, 11 CIT 436, 664 F. Supp 1453 (1987), which involved the failure to disclose an internal investigative report in proceedings to revoke a license to cart bonded merchandise.  Pl.'s Br. 8.  The failure led this Court to question whether "asserting such denial of due process can ever result in an *ex post facto* determination under EAJA that the position of the United States in court was substantially justified."  *Bonanza Trucking*, 11 CIT at 440, 664 F. Supp at 1456.

Plaintiff then notes that, despite the alleged gravity of his action (i.e., that the national security of the country was at stake), it was revealed during the litigation that Customs compiled no contemporaneous administrative record prior to the commencement of this action.  Pl.'s Br. 10.  Moreover, Mr. Lizarraga was not permitted to see, review, or respond to any of the "charges" underlying the agency's action.  Pl.'s Br. 10.

According to plaintiff, Customs also failed to provide him (or
any other broker) with any guidance on what type of actions would
constitute "misuse" of the entry filer code, and arbitrarily and
capriciously denied his request for even a short delay of the
effective date for deactivation.  Pl.'s Br. 11.  Taken together,
then, Lizarraga contends that "from the point of view of a
'reasonable person,' defendants' position at the administrative
level, particularly the decision to completely deny [] Lizarraga
due process prior to taking action that defendants knew or should
have known would destroy his business, would not be considered
correct."  Pl.'s Br. 12.

        Defendants argue that their position regarding Mr.
Lizarraga's due process claim was reasonable because: (1) it was
based upon a reasoned examination of the entry process and the
factors that distinguish entry filer codes from broker's
licenses; (2) there is a "genuine dispute" between the parties as
to whether Mr. Lizarraga should have been afforded the procedural
protections of 19 U.S.C. § 1641(d) prior to the deactivation or
suspension of his entry filer code; and (3) the question of what
due process should be afforded customs brokers when their entry
filer codes are deactivated is one of first impression, and the
agency's processes were consistent with its mission of border
security and protecting the integrity of the entry process.
Defs.' Mem. 12.

The court concludes that defendants' position was unreasonable and that Customs has conceded as much.  As noted, "only one threshold determination for the entire civil action is to be made." *Jean*, 496 U.S. at 159.  That is, the measure of "substantial justification" is not made at various stages of a case, but only once.  Here, it is clear that the actions taken at the agency level by Customs were not justified, and that defendants recognized that this was true early on in the proceedings before the court.  First, even before filing their Amended Answer, defendants sought a voluntary remand to: (1) issue a new Notice of Action; and (2) allow Mr. Lizarraga to administratively challenge the agency's action.  Defs.' Mot. to Stay & for Vol. Remand 2.  Thus, at the beginning stages of the litigation, defendants recognized that Mr. Lizarraga was entitled to due process, which he had been denied when the initial determination was made.

Thereafter, defendants filed their Amended Answer which stated "defendants admit that the suspension or deactivation of a broker's entry filer code must comport with the [APA]."  Am. Answer ¶ 22(iii).  Thus, defendants conceded not only that Lizarraga and other brokers were owed due process, but they identified the minimum procedures to which they were entitled.  Finally, in their Confession of Judgment, defendants conceded their error in suspending Mr. Lizarraga's entry filer code.

Confession of Judgment 3 ("[W]e agree not to suspend or
deactivate Mr. Lizarraga's entry filer code for any past fact or
event." ).  Thus, it is clear that defendants acknowledged that
Customs' actions were not based on a "reasoned examination" of
the entry process, and that there was no genuine dispute on the
case's two major issues, i.e., (1) that Customs was not legally
justified in its suspension of Mr. Lizarraga's entry filer code;
and (2) Mr. Lizarraga was entitled to due process before his
entry filer code could be suspended.  Indeed, the only "genuine
dispute" in this case was the kind of due process that plaintiff
was entitled to when Customs moved against him.  Based on the
foregoing, it is clear that defendants have not demonstrated that
their position was substantially justified.

C. Special Circumstances

Should the court find that their position was not
substantially justified, defendants argue, in the alternative,
that special circumstances make a fee award unjust, as "equitable
considerations weigh against awarding EAJA fees."  Defs.' Mem.
24—25 (listing as such "equitable considerations": (1) "the
alleged misuse associated with Mr. Lizarraga's filer code [that]
was compromising the integrity of the entry process"; (2) the
lack of "clear standards, by way of judicial precedent, statute,
or otherwise, that could have guided the Government"; and (3)

"Mr. Lizarraga's actions that . . . unnecessarily protracted this litigation"). They note that special circumstances have been recognized where the government unsuccessfully advanced novel and credible legal theories in good faith, where the case is one of first impression, or where there is an unsettled area of the law. Defs.' Mem. 24. Characterizing their actions during the litigation as "advanc[ing] a novel and credible legal theory," defendants view an award of attorney's fees in this case as "punish[ing] the Government for advancing a plausible legal argument in good faith." Defs.' Mem. 24.

Despite defendants' arguments to the contrary, the progress of this case demonstrates that defendants never advanced any novel theories, as they quickly moved to abandon their position with respect to Customs' administrative action. Although defendants claim that the decision to confess judgment was based on a cost/benefit analysis, it is simply not credible that they would abandon the country's national security because of the cost of engaging an administrative law judge. Rather, it seems clear that defendants realized their case was untenable, and sought an accommodative result. Indeed, defendants never advanced a "plausible legal theory," but rather progressively receded from Customs' initial position until ultimately conceding error and ending the case.

As to defendants' claim that Mr. Lizarraga unnecessarily

protracted the litigation, the facts indicate the contrary.  That

is, plaintiff can hardly be said to have extended the case by

refusing to agree to actions that were not in his best interest.

For instance, had plaintiff agreed to the voluntary remand, there

is no guarantee that he would have achieved the result of Customs

withdrawing the suspension of his entry filer code, the very

result he accomplished by continuing the case.  Thus, this case

presents no special circumstances that would preclude an EAJA

award, rather, if the equities favor either party, it is

plaintiff.


     D. Timely Filed Itemized Statement

     Under 28 U.S.C. § 2412(d)(1)(B), "[a] party seeking an award

of fees and other expenses shall, within thirty days of final

judgment in the action, submit to the court an application for

fees and other expenses . . . , including an itemized statement

. . . stating the actual time expended and the rate at which fees

and other expenses were computed."  28 U.S.C. § 2412(d)(1)(B).

Thus, the final component of the four-part analysis set forth in

*Tyco Electronics* is whether "the fee application is timely and

supported by an itemized fee statement."  *Former Emps. of Tyco

Elecs. v. U.S. Dep't of Labor*, 28 CIT 1571, 1577, 350 F. Supp. 2d

1075, 1081 (2004).  For purposes of EAJA, an application is

timely if it is filed "within thirty days of final judgment in

the action," and "'final judgment' means a judgment that is final

and not appealable."   28 U.S.C. §§ 2412(d)(1)(B), (d)(2)(G).

Under Fed. R. App. P. R. 4(a)(1)(B), a final judgment is

appealable "within 60 days after the judgment or order appealed

from is entered" when "the United States or its officer or agency

is a party."   Therefore, for purposes of EAJA, an applicant has

thirty days from the expiration of the sixty-day appeal period to

file an EAJA application.  *See Impresa Construzioni Geom.*

*Domenico Garufi v. United States*, 531 F.3d 1367, 1370 (Fed. Cir.

2008) ("[T]he time for filing an EAJA request [runs] from the

expiration of the time for appeal, without consideration of

whether the particular final judgement would have or could have

been appealed.").

      Here, final judgment was entered on October 4, 2010,

*Lizarraga*, 34 CIT __, Slip Op. 10-113.  Thus, the judgment was

appealable until December 3, 2010 and plaintiff had until January

3, 2011 to file his EAJA application.  Plaintiff filed his Form

15 application on December 21, 2010 and also provided the

requisite itemized statement detailing the time expended on the

case, as well as the appropriate supporting documentation

demonstrating that he meets the net worth requirement of EAJA.[4]

---

      [4]    Under 28 U.S.C. § 2412(d)(2)(B), parties eligible to
recover fees and expenses under EAJA include "(i) an individual
whose net worth did not exceed $2,000,000 at the time the civil
action was filed, or (ii) any owner of an unincorporated

Pl.'s Decl. in Supp. of Appl., Ex. A, B.  The defendants do not

dispute that plaintiff's application was timely filed.

Therefore, plaintiff has satisfied all four parts of the *Tyco*

analysis.


III. Amount of Award

     The plaintiff's itemized statement includes (1) 671 hours of

attorneys' time; (2) 19.1 hours of paralegals' time; and (3)

other costs and expenses totaling $2,850.16.  Pl.'s Decl. in

Supp. of Appl., Ex. A.  The plaintiff thus seeks reimbursement

for $223,305.83 in combined attorney and paralegal fees, and an

additional $2,850.16 in costs and expenses, for a total of

$226,155.99.  Pl.'s Decl. in Supp. of Appl. 5 ¶ 13.


     A. Apportionment

     The problem arises as to how to handle fees incurred by Mr.

Lizarraga with respect to pressing his position that he was

entitled to "basic due process, in accordance with the letter or

spirit of 19 U.S.C. § 1641(d)(2)(B)" as demanded in his

_____

business, or any partnership, corporation, association, unit of
local government, or organization, the net worth of which did not
exceed $7,000,000 at the time the civil action was filed, and
which had not more than 500 employees at the time the civil
action was filed."  28 U.S.C. § 2412(d)(2)(B).  Here, plaintiff
has demonstrated his eligibility through submission of an
affidavit from his Certified Public Accountant.  Baker Aff.,
Pl.'s Decl. in Supp. of Appl., Ex. B.

Complaint.  Compl. ¶ 23(c).  That is, in his Complaint Mr.
Lizarraga insisted that, before his entry filer code could be
suspended, he was entitled to all of the procedures and
protections to which he would have been entitled had Customs
sought to revoke his broker's license.  While it is clear that
defendants' suspension of Mr. Lizarraga's entry filer code at the
administrative level was not substantially justified, it is also
clear that the precise degree of due process to which he was
entitled at the administrative level remained an open question at
the close of the case.  The court never reached a final decision
on this issue because defendants' Confession of Judgment ended
the case.

The question then becomes whether Mr. Lizarraga is entitled
to legal fees for all of the time his counsel expended, or only
for the time spent on the precise issues on which he received a
favorable judgment.  In other words, while the court has rejected
defendants' claim that Mr. Lizarraga is not entitled to any legal
fees because it did not reach the merits of Mr. Lizarraga's
claims, this does not settle the question of whether he is
entitled to fees for the issues on which he did not receive all
of the relief demanded in his complaint.

The court finds that Mr. Lizarraga is entitled to attorney's
fees for all of the time his lawyers put into this case for two
reasons.  First, as noted, the inquiries to determine (1) whether

plaintiff is a prevailing party and (2) whether there was a
substantial justification for the government's actions are made
once for the entire litigation, not on an issue-by-issue basis.
This being the case, the Supreme Court has indicated that only
one finding should likewise be made with respect to fees, unless
the claims in a lawsuit are so distinct they could have been
litigated in separate lawsuits.  *See Hensley*, 461 U.S. at 435-36;
*see also Wagner v. Shinseki*, 640 F.3d 1255, 1259 (Fed. Cir. 2011)
(citing *Jean*, 496 U.S. at 160); *Barrera v. Principi*, 18 Fed.
Appx. 901, 904 (Fed. Cir. 2001) (citing *Jean*, 496 U.S. at
161-62).  Therefore, "a fee award presumptively encompasses all
aspects of the civil action."  *Jean*, 496 U.S. at 161; *see also
Wagner*, 640 F.3d at 1259; *Former Emps. of Motorola Ceramic Prods.
v. United States*, 336 F.3d 1360, 1368 n.3 (Fed. Cir. 2003);
*Barrera*, 18 Fed. Appx. at 904.  Here, as discussed *supra*, the
court concludes that plaintiff was the prevailing party and that
the defendants' positions were not substantially justified.
Having made these threshold determinations, the court is not
required to further this inquiry on an issue-by-issue basis for
the purposes of awarding attorney's fees under EAJA.

Second, even if the court were inclined to examine
plaintiff's entitlement to fees on an issue-by-issue basis, this
approach would be impracticable in this case.  Indeed,
apportioning the fee award here is inappropriate because the

issues were so inextricably linked that they cannot be separated
in any meaningful way.  In cases where "a plaintiff . . .
present[s] in one lawsuit distinctly different claims for relief
that are based on different facts and legal theories . . . ,
counsel's work on one claim will be unrelated to his work on
another claim." *Hensley*, 461 U.S. at 434-35.  In such cases, the
"congressional intent to limit awards to prevailing parties
requires that these unrelated claims be treated as if they had
been raised in separate lawsuits, and therefore no fee may be
awarded for services on the unsuccessful claim." *Id.* at 435.

    In other cases, however, "the plaintiff's claims for relief
will involve a common core of facts or will be based on related
legal theories.  Much of counsel's time will be devoted generally
to the litigation as a whole, making it difficult to divide the
hours expended on a claim-by-claim basis." *Id.; see also Plyler
v. Evatt*, 902 F.2d 273, 280-81 (4th Cir. 1990) (quoting *Hensley*,
461 U.S. at 435) ("[W]here the issues presented in the later
proceedings or in separate claims involve the same common core of
facts or related legal theories, the case 'cannot be viewed as a
series of discrete claims.'").  In such cases**,** "[w]hile the
parties' postures on individual matters may be more or less
justified, the EAJA—like other fee-shifting statutes—favors
treating a case as an inclusive whole, rather than as atomized
line-items." *Jean*, 496 U.S. at 161-62.

Here, the issue central to all of plaintiff's claims and all of defendants' defenses was the due process, if any, to which Mr. Lizarraga was entitled when Customs took steps to suspend his entry filer code.  Thus, the issues were "overlapping and intertwined." *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981).  When the issues in a case are "overlapping and intertwined," a court may decline "to dissect the interlocking evidence and consider it in isolation as supporting only one claim or the other." *Williams v. Roberts*, 904 F.2d 634, 640 (11th Cir. 1990); *see also Plyler*, 902 F.2d at 280-81 (quoting *Willie M. v. Hunt*, 732 F.2d 383, 386 (4th Cir. 1984) ("Here the district court acted within its discretion in ruling that the issues . . . were so 'inextricably intermingled with the original claims in the lawsuit' that severing those proceedings for a separate analysis of 'prevailing party' status was not justified."); *Afro-Am. Patrolmen's League v. City of Atlanta*, 817 F.2d 719, 725 (11th Cir. 1987) (quoting *Jones*, 636 F.2d at 1382) ("'In fixing the fee, the district court should be mindful that in complex civil rights litigation . . . issues are overlapping and intertwined.'").

Thus, plaintiff is entitled to fees for all of the hours spent prosecuting his case.

B.   Special Factor Enhancement

When granting an application for attorney's fees, the court is directed to award "reasonable fees and expenses."  28 U.S.C. § 2412(b).  Pursuant to 28 U.S.C. § 2412(d)(2)(A), "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase of cost of living or a special factor, such as limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."

Counsel for plaintiff seeks a special factor enhancement and in the event the court does not award such increase, a cost of living fee adjustment.

According to Mr. Lizarraga's lawyers, the "special factor" enhancement applies to this case because they have "extensive experience in customs law and litigation, and distinctive knowledge and specialized skill in the representation of customs brokers," and "[t]he competent and effective prosecution of plaintiff's case required the specialized skills in customs practice and litigation and knowledge of the customs brokerage regulations and practices that are beyond what general practice lawyers would encounter."  Pl.'s Br. 22—23.  In other words, plaintiff believes a special factor enhancement is required here because (1) his counsel possess expertise in a specialized practice area; and (2) these specialized skills were necessary to adequately represent the client.

At the outset, it should be noted that the grant of a
special factor enhancement is conditioned upon the requirement
that specialized skill was actually needed for the action before
the court.  In *Pierce*, the Supreme Court clarified that the EAJA
special factor exception for qualified attorneys "refers to
attorneys having some distinctive knowledge or specialized skill
needful for the litigation in question." *Pierce*, 487 U.S. at
572.  The Court noted, as an example of a special factor,
expertise in "an identifiable practice specialty such as patent
law." *Id.*  The Court then listed several factors that it deemed
*insufficient* to merit an increase in the statutory cap: "[t]he
'novelty and difficulty of issues,' 'the undesirability of the
case,' the 'work and ability of counsel,' and 'the results
obtained.'" *Id.* at 573 (internal citations omitted).  The Court
explained that these "are factors applicable to a broad spectrum
of litigation; they are little more than routine reasons why
market rates are what they are." *Id.*

As this Court has found in the past, for purposes of EAJA,
customs law is a specialized practice area, distinct from general
and administrative law. *Jazz Photo Corp. v. United States*, 32
CIT __, __, 597 F. Supp. 2d 1364, 1369 (2008) (citing *Nakamura v.
Heinrich*, 17 CIT 119, 121 (1993) (not reported in the Federal
Supplement)).  It is not clear, however, that specialized customs
law skills were required for competent representation in this

case.  *See Jazz Photo*, 32 CIT at \_\_, 597 F. Supp. 2d at 1369-70
(declining to award a special factor enhancement for all issues
in a customs case except for one because "specialized customs law
skills" were only required for that one issue) (citing *Role
Models Am., Inc. v. Brownlee*, 353 F.3d 962, 969 (D.C. Cir. 2004)
("*Pierce* made clear that an increase in the cap is justified only
by work requiring specialized skills or knowledge beyond what
lawyers use on a regular basis.  Producing high-quality work on a
short deadline hardly satisfies this standard.")).

Having been an active participant in this case throughout,
the court finds that the due process arguments that were central
to the case could have been made by any competent lawyer familiar
with administrative law.  Furthermore, the knowledge needed to
make Mr. Lizarraga's arguments with respect to the importance of
the entry filer code could have been conveyed to any competent
attorney by plaintiff himself.  This being the case, the novelty
and difficulty of the issues, although they were present, did not
require the attention of lawyers who specialize in customs law.

In addition, while customs law is a specialized area of law,
the special factor of "the limited availability of qualified
attorneys for the proceedings involved," 28 U.S.C.
§ 2412(d)(2)(A)(ii), also implies difficulty in securing
qualified counsel at a reasonable rate due to scarcity or other
factors.  *Jazz Photo*, 597 F. Supp. 2d at 1370 (citing *Hyatt v.*

*Barnhart*, 315 F.3d 239, 249 (4th Cir. 2002)).  Indeed, "the statute does not assign extra compensation by 'fields' but by asking the practical question whether in the case at hand lawyers qualified to handle the case can be found for $125 or less." *Atl. Fish Spotters Ass'n v. Daley*, 205 F.3d 488, 492 (1st Cir. 2000).  As defendants point out, even if specialized skills were required to litigate this case, plaintiff has made no showing that he could not have secured counsel at the regular rate. Defs.' Mem. 28.  Indeed, plaintiff has not even argued that there were no other attorneys available who could have handled the case.  *Id.* at 29.  As a result, plaintiff is not entitled to a special factor enhancement.

### C. Cost of Living Adjustment

With respect to an increase for the cost of living, based on long-established precedent and the defendants' failure to object, the court finds that a cost of living increase is warranted.  *See* 28 U.S.C. § 2412(d)(2)(A)(ii).  The court may exercise judicial discretion in granting cost of living adjustments so as to effectuate the intent of Congress "to provide adequate compensation notwithstanding inflation." *Payne v. Sullivan*, 977 F.2d 900, 903 (4th Cir. 1992).  In making a cost of living adjustment, the court may calculate the increase using the

Consumer Price Index ("CPI-U").[5]  *See Kerin v. U.S. Postal Serv.*,
218 F.3d 185, 194 (2d Cir. 2000) ("[T]he district court may
choose to apply a cost of living adjustment to [the statutory
rate], as measured by the Consumer Price Index.").

Here, the court calculates adjustments to EAJA fees using
the CPI-U data for the Northeast Urban Area, available from the
Bureau of Labor Statistics, for the periods in which the services
were performed: the second half of 2008, all of 2009, and 2010.
*See Kerin*, 218 F.3d at 194 ("[T]he hourly rate . . . should only
be increased by the corresponding Consumer Price Index for each
year in which the legal work was performed." (internal citation
omitted)).  To calculate the EAJA fee adjustment, the court makes
an adjustment to the $125 statutory EAJA amount.  *See Allegheny
Bradford Corp. v. United States*, 28 CIT 2107, 2114, 350 F. Supp.
2d 1332, 1339 (2004); 28 U.S.C. § 2412(d)(2)(A)(ii).  The
adjustment is calculated as follows: the statutory hourly rate
($125) is multiplied by the applicable CPI-U for the time period,
divided by the CPI-U for March 1996 when the EAJA statutory cap
went into effect.

Accordingly, the adjusted EAJA fee rate for 2008 is $177.15
($125 x 230.723/162.8).  The adjusted rate for 2009 is $181.83

---

[5]     "CPI-U" refers to the Consumer Price Index data for
"All Urban Consumers."  Consumer Price Index, U.S. Bureau of Lab.
Stats., http://www.bls.gov/cpi/tables.htm (last visited Sept. 20,
2011).

($125 x 236.825/162.8).  The adjusted rate for 2010 is $184.32

($125 x 240.059/162.8).


  D. Calculation

  The court must next consider the number of hours requested

in the EAJA application.  As noted, plaintiff's itemized

statement includes (1) 671 hours of attorneys' time; (2) 19.1

hours of paralegals' time; and (3)other costs and expenses

totaling $2,850.16.  Pl.'s Decl. in Supp. of Appl., Ex. A.

  Plaintiff has therefore requested reimbursement for 19.1

hours of paralegal time.  Although "the EAJA makes no explicit

provision for law clerk 'fees,'" *Nakamura*, 17 CIT at 122; *see

also Masias v. Sec'y of Health & Human Servs.*, 634 F.3d 1283,

1288 (Fed. Cir. 2011), the Supreme Court has determined that "a

prevailing party that satisfies EAJA's other requirements may

recover its paralegal fees from the Government at prevailing

market rates." *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571,

590 (2008).  Here, plaintiff's request for paralegal time is

billed at various hourly rates, ranging from $100 to $175, which

plaintiff has affirmed is "well within the range of prevailing

market rates for a specialized practice area like customs

litigation."  Pl.'s Decl. in Supp. of Appl. 4-5 ¶ 11.  As there

is no indication that these rates are not the norm and because

defendants have not challenged them, they will be used to

calculate the reimbursement amount for paralegal services.

Finally, while the defendants oppose the awarding of attorney fees to plaintiff generally, they have not challenged any specific portion of plaintiff's claim or any item included on plaintiff's statement. Defs.' Mem. 28-29. Additionally, defendants have not challenged the reasonableness of any of the additional costs and expenses, totaling $2,850.16, itemized by plaintiff.

Because defendants have failed to object to any specific cost or set of hours billed by plaintiff, and have not asked the court to exclude any charged items, all of the hours provided by plaintiff will be used to calculate the total reimbursement award according to the calculations displayed in the table below. Plaintiff, however, has not provided an annual breakdown of attorneys' hours so that the CPI-U adjusted hourly rate can be applied to yield a cost-of-living-adjusted fee rate for the second half of 2008, all of 2009, and 2010. As a result, plaintiff is directed to prepare a revised EAJA application detailing the eligible attorneys' hours by year, excluding hours for paralegal services, so that the court may determine the proper EAJA award.

Court No. 08-00400                                          Page 45

| Item | Rate | Calculation | Total |
|---|---|---|---|
| **Attorney's Fees (2008)** | 2008 CPI-U Adjusted Rate: $177.15 ($125 x 230.723/162.8) | $177.15 x ____ Hours | **$_____** |
| **Attorney's Fees (2009)** | 2009 CPI-U Adjusted Rate: $181.83 ($125 x 236.825/162.8) | $181.83 x ____ Hours | **$_____** |
| **Attorney's Fees (2010)** | 2009 CPI-U Adjusted Rate: $184.32 ($125 x 240.059/162.8) | $184.32 x ____ Hours | **$_____** |
| **Paralegal Services** | Prevailing Market Rate As Determined by Plaintiff | 19.1 Hours x Prevailing Market Rate ($100 to $175 per hour) | **$1,833.00** |
| **Costs** | | | **$2,850.16** |
| | | **TOTAL** | **$_____** |

CONCLUSION

For the reasons set forth above, plaintiff's application for fees and other expenses pursuant to the EAJA is GRANTED. Accordingly, it is hereby

ORDERED that plaintiff provide a yearly breakdown of attorneys fees (excluding paralegal services) by November 16, 2011.

                                    /s/ Richard K. Eaton
                                    Richard K. Eaton


Dated:      October 17, 2011
            New York, New York